# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHWESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>           Plaintiff,<br><br>v.<br><br>BRIAN RUTH, SR.,<br><br>           Defendant. | No. 21-05019-01-CR-SW-RK |

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the parties described below have entered into the following plea agreement:

1. **The Parties.** The parties to this agreement are the United States Attorney's Office for the Western District of Missouri (otherwise referred to as "the Government" or "the United States"), represented by Teresa A. Moore, Acting United States Attorney, and Patrick Carney, Assistant United States Attorney, and the defendant, Brian Ruth, Sr. ("the defendant"), represented by Ian Lewis, Assistant Federal Public Defender.

The defendant understands and agrees that this plea agreement is only between him and the United States Attorney for the Western District of Missouri, and that it does not bind any other federal, state or local prosecution authority or any other government agency, unless otherwise specified in this agreement.

2. **Defendant's Guilty Plea.** The defendant agrees to and hereby does plead guilty to Count 1 of the Information, charging him with a violation of 18 U.S.C. § 1343, that is, wire fraud. Furthermore, the defendant agrees to and hereby does plead guilty to Counts 2 and 3 of the Information, each charging him with a violation of 18 U.S.C. § 1957, that is, money laundering.

The defendant also agrees to forfeit to the United States the property described in of the Forfeiture Allegations of the Information. By entering into this plea agreement, the defendant admits that he knowingly committed these offenses, and is, in fact, guilty of these offenses.

3. **Factual Basis for Guilty Plea.** The parties agree that the facts constituting the offenses to which the defendant is pleading guilty are as follows:

The United States Small Business Administration (SBA) is an executive branch agency of the United States. The mission of the SBA is to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters. As part of this effort, the SBA enables and provides for loans through banks, credit unions, and other lenders.

The Coronavirus Aid, Relief, and Economic Security (CARES) Act is a federal law enacted in or around March 2020 designed to provide emergency financial assistance to Americans suffering economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act is the Paycheck Protection Program (PPP). The SBA enabled and provided for loans through banks, credit unions, and other lenders. These loans had government backed guarantees. In order to obtain a PPP loan, a qualifying business was required to submit a PPP loan application, signed by an authorized representative of the business, to a lender participating in the PPP. The loan application required the authorized representative of the business to affirm, among other items, the following:

A) The business was in operation on February 15, 2020 and had employees for whom it paid salaries. Further, the applicant was required to state (a) average monthly payroll expenses, and (b) number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. The applicant was required to provide documentation showing the business payroll expenses;

B) The funds would be used exclusively to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule; the applicant understood that if the funds were knowingly used for unauthorized purposes the federal government may hold the applicant legally liable, such as for charges of fraud.

C) The information provided in the application and all supporting documents and forms is true and accurate in all material aspects. Knowingly

2

making false statements to obtain a loan from the SBA was punishable under the law including 18 USC 1041.

## WIRE FRAUD SCHEME

During the course of its investigation, agents with the Internal Revenue Service – Criminal Investigations determined that BRIAN RUTH, SR. (RUTH) engaged in monetary transactions by using the proceeds of Specified Unlawful Activities (SUA), namely Wire Fraud, for the year 2020, in violation of Title 18 U.S.C. § 1343. RUTH engaged in these SUAs to accomplish his scheme to fraudulently obtain PPP loan funds.

RUTH's fraud scheme culminated with the electronic submission of SBA Form 2483 loan applications for RUTH PROPERTIES MGM LLC, RUTH PROPERTIES MGM, and RUTH TRUCKING LLC to WebBank, as the lender for PayPal Business Loan. The SBA Forms 2483 signed and submitted electronically by RUTH requested PPP loans of $69,165, $336,600, and $117,000, respectively. Each of the SBA Form 2483 loan applications submitted by RUTH contained materially false statements that RUTH furthered by submitting fraudulent supporting documents to WebBank with the intent to influence WebBank to provide RUTH with the PPP loan proceeds he requested. More specifically, RUTH falsely claimed his three businesses were operational and employed numerous individuals, when in truth and fact, RUTH's business had not been open or operational since before February of 2020, and did not employ any other individuals. These loan applications were sent from and involved RUTH's residence and claimed business located in Jasper and Henry Counties, Missouri, in the Western District of Missouri, to WebBank, which is located in Salt Lake City, Utah, through wire transmissions, via the Internet, that crossed state boundaries in interstate commerce, in violation of 18 U.S.C. § 1343.

RUTH then directed the fraudulently obtained PPP loan proceeds to be wired to financial accounts he controlled. RUTH obtained PPP loan proceeds totaling $522,765, which were deposited by wire into his banks accounts with JP Morgan Chase Bank and Lamar Bank and Trust. Once RUTH obtained the PPP loan proceeds, RUTH engaged in monetary transactions involving property of a value greater than $10,000, specifically, the purchase of several vehicles, including the following:

A) 2016 Cadillac, with vehicle identification number "1G6AH5RXX G0115096;"

B) 2017 Dodge Challenger, with vehicle identification number "2C3CDZBT7HH665597;" and

3

C) 2020 Dodge Charger, with vehicle identification number "2C3CDXHG7LH177791."

The purchase of these vehicles with fraudulently obtained PPP loans and monies were in violation of 18 U.S.C. § 1957.

### Wire Fraud – Count 1

Based on the documentation received from the SBA and WebBank, RUTH submitted documents through the use of wire transmission via the Internet to obtain PPP loans. The documents submitted by RUTH contained materially false information that was intended to mislead both WebBank and the SBA to approve loans through PPP that would not have been authorized had RUTH provided correct and truthful information as to the true status of his businesses or that he had no employees at the time of February 2020. RUTH submitted the false and fraudulent documents by utilizing wire transmission via the Internet to send said documents from his residence in Henry County, Missouri, within the Western District of Missouri, for consideration and approval with WebBank in Salt Lake City, Utah. Once the loans were approved based on RUTH's false and fraudulent information, WebBank then approved these PPP loan applications and deposited monies into RUTH's bank account again utilizing wire transmissions that crossed interstate boundaries. Ultimately, RUTH knowingly presented false information to obtain PPP loans that he would have otherwise been denied had bank officials been aware of or presented with true and accurate information.

Specifically, as is reflected within the Information, on or about June 24, 2020, said date being approximate, BRIAN RUTH, SR., devised and intended to devise a scheme and artifice to defraud WebBank and the SBA, for the purpose of obtaining money and property by means of false and fraudulent pretenses, representations, and promises, knowingly transmitted and caused to be transmitted in interstate commerce, wire and radio sounds, and signals, that is an electronic wire transmission of a loan application and supporting documents with false information contained therein, sent via facsimile over telephone wires originating from RUTH's, businesses, located in Jasper and Henry Counties, Missouri, located in the Western District of Missouri, to WebBank, located in Salt Lake City, Utah, all in violation of Title 18, United States Code, Section 1343.

### Money Laundering - Count 2

Once RUTH received the aforementioned monies from the PPP loan application and documents, which contained false information sent via wire communication to WebBank, on or about June 24, 2020, through July 21, 2020, said dates being approximate, in Jasper and Henry Counties, RUTH then knowingly engaged in a monetary transaction by and through a financial institution, within the Western District of Missouri, and elsewhere, effecting interstate and foreign

4

commerce, in criminally derived property of a value greater than $10,000, that is, the withdrawal of monies totaling $27,415.00 from RUTH's JP Morgan Chase bank account ending with XXXX0580, under the business name of Ruth Properties MGM, LLC, and depositing those monies into the business bank account of Jim Falk Motors. The monies sent to Jim Falk Motors were proceeds obtained by RUTH as a result of wire fraud committed against WebBank and the SBA. RUTH used these monies to conduct a financial transaction to purchase a 2017 Dodge Challenger, with vehicle identification number "2C3CDZBT7HH665597," knowing said money had been obtained from the aforementioned specified unlawful activity. All in violation of Title 18, United States Code, Section 1957.

### Money Laundering – Count 3

Upon receiving additional monies obtained from the fraudulent PPP loan applications and documents, which contained false information sent via wire communication to WebBank, on or about May 27, 2020, through July 21, 2020, said dates being approximate, in Jasper and Henry Counties, RUTH knowingly engaged in a monetary transaction by and through a financial institution, within the Western District of Missouri, and elsewhere, effecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, that is, the withdrawal of monies totaling $49,841.00 from RUTH's JP Morgan Chase bank account ending with XXXX5963 and RUTH's Lamar Bank and Trust account ending with XXX266, and depositing those monies into the business bank account of Jim Falk Motors. The monies sent to Jim Falk Motors by RUTH were proceeds obtained by RUTH as a result of wire fraud committed against WebBank and the SBA. RUTH then conducted a financial transaction to purchase a 2016 Cadillac, with vehicle identification number "1G6AH5RXXG0115096," and a 2020 Dodge Charger, with vehicle identification number "2C3CDXHG7LH177791." RUTH then resold the two aforementioned vehicles to Fletcher Auto Group in Joplin, Missouri, thereby conducting another financial transaction to purchase a 2020 Dodge Challenger, with vehicle identification number "2C3CDZFJ4LH246303." RUTH conducted each of these financial transactions all while knowing said monies and financial transactions were obtained and resulted from the specified unlawful activity of wire fraud. All in violation of Title 18, United States Code, Section 1957.

RUTH admits that the 2017 Dodge Challenger, with vehicle identification number "2C3CDZBT7HH665597;" and the 2020 Dodge Challenger, with vehicle identification number "2C3CDZFJ4LH246303," were proceeds from the offenses set forth in Counts One through Three. Further, RUTH admits that the sum and aggregate of the proceeds from Count One through Three is at least $366,600.00.

4. **Use of Factual Admissions and Relevant Conduct.** The defendant acknowledges, understands and agrees that the admissions contained in paragraph 3 and other

5

portions of this plea agreement will be used for the purpose of determining his guilt and advisory sentencing range under the United States Sentencing Guidelines ("U.S.S.G."), including the calculation of the defendant's offense level in accordance with U.S.S.G. § 1B1.3(a)(2). The defendant acknowledges, understands and agrees that the conduct charged in any dismissed counts of the Information, as well as all other uncharged, related criminal activity, may be considered as "relevant conduct" pursuant to U.S.S.G. § 1B1.3(a)(2) in calculating the offense level for the charges to which he is pleading guilty.

5. **Statutory Penalties.** The defendant understands that, upon his plea of guilty to Count 1 of the Information, charging him with wire fraud, pursuant to 18 U.S.C. § 1343, the minimum penalty the Court may impose for each count is not less than probation, while the maximum penalty the Court may impose is not more than 20 years' imprisonment, not more than three years' supervised release, a $250,000 fine, an order of restitution, and a $100 mandatory special assessment per felony count of conviction, which must be paid in full at the time of sentencing. The defendant further understands that this offense is a Class C felony.

The defendant further understands that, upon his plea of guilty to Counts 2 and 3 of the Information, charging him with money laundering, pursuant to 18 U.S.C. § 1957, the minimum penalty the Court may impose is not less than probation, while the maximum penalty the Court may impose is not more than 10 years' imprisonment, not more than three years' supervised release, a $250,000 fine, an order of restitution, and a $100 mandatory special assessment per felony count of conviction, which must be paid in full at the time of sentencing. The defendant further understands that these offenses are each a Class C felony.

6. **Sentencing Procedures.** The defendant acknowledges, understands and agrees to the following:

6

a. in determining the appropriate sentence, the Court will consult and consider the United States Sentencing Guidelines promulgated by the United States Sentencing Commission; these Guidelines, however, are advisory in nature, and the Court may impose a sentence either less than or greater than the defendant's applicable Guidelines range, unless the sentence imposed is "unreasonable";

b. the Court will determine the defendant's applicable Sentencing Guidelines range at the time of sentencing;

c. in addition to a sentence of imprisonment, the Court may impose a term of supervised release of up to three years for Counts 1 through 3 of the Information;

d. if the defendant violates a condition of his supervised release, the Court may revoke his supervised release and impose an additional period of imprisonment of up to three years on Counts 1 through 3 of the Information, without credit for time previously spent on supervised release. In addition to a new term of imprisonment, the Court also may impose a new period of supervised release, the length of which cannot exceed two years for Counts 1 through 3, less the term of imprisonment imposed upon revocation of the defendant's first supervised release;

e. the Court may impose any sentence authorized by law, including a sentence that is outside of, or departs from, the applicable Sentencing Guidelines range;

f. any sentence of imprisonment imposed by the Court will not allow for parole;

g. the Court is not bound by any recommendation regarding the sentence to be imposed or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Office;

h. the defendant may not withdraw his guilty plea solely because of the nature or length of the sentence imposed by the Court;

i. the defendant agrees that the United States may institute civil, judicial, or administrative forfeiture proceedings against all forfeitable assets in which the defendant has an interest, and that he will not contest any such forfeiture proceedings;

j. the defendant agrees to forfeit all interests he owns or over which he exercises control, directly or indirectly, in any asset that is subject to forfeiture to the United States, either directly or as a substitute for property that was subject to forfeiture but is no longer available for the reasons set forth in 21 U.S.C. § 853(p), including but not limited to the following specific property: a 2017 Dodge

Challenger, with vehicle identification number "2C3CDZBT7HH665597;" a 2020 Dodge Challenger, with vehicle identification number "2C3CDZFJ4LH246303;" and a monetary judgment that constitutes the sum of the aggregate proceeds of the fraudulent scheme in United States currency that defendant received from the commission of the offense alleged in Count 1 in the amount of at least $366,600.00.

k. With respect to any asset which the defendant has agreed to forfeit, the defendant waives any constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this plea agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment under the Eighth Amendment to the United States Constitution;

l. The defendant agrees to fully and truthfully disclose the existence, nature and location of all assets forfeitable to the United States, either directly or as a substitute asset, in which he, his co-defendants and his co-conspirators have or had any direct or indirect financial interest, or exercise or exercised control, directly or indirectly, during the period from May 21, 2020, to the present. The defendant also agrees to fully and completely assist the United States in the recovery and forfeiture of all such forfeitable assets;

m. The defendant agrees to take all necessary steps to comply with the forfeiture matters set forth herein before his sentencing;

n. The defendant states that he is the sole and rightful owner of a 2017 Dodge Challenger, with vehicle identification number "2C3CDZBT7HH665597" and 2020 Dodge Challenger, with vehicle identification number "2C3CDZFJ4LH246303," and that, to the best of his knowledge, no one else has any ownership or other interest in the property. In the event any federal, state, or local law enforcement agency having custody of the property decides not to pursue forfeiture of the property due to its minimal value, the defendant hereby abandons any interest he has in such property and consents to the destruction or any other disposition of the property by the federal, state or local agency without further notice or obligation whatsoever owing to the defendant;

o. Within ten (10) days of the execution of this plea agreement, at the request of the United States Attorney's Office ("USAO"), the defendant agrees to execute and submit (1) a Tax Information Authorization form; (2) an Authorization to Release Information; (3) a completed financial disclosure statement; and (4) copies of financial information that the defendant submits to the U.S. Probation Office. The defendant understands that the United States will use the financial information when making its recommendation to the Court regarding the defendant's acceptance of responsibility; and

p. At the request of the USAO, the defendant agrees to undergo any polygraph examination the United States might choose to administer concerning the identification and recovery of forfeitable assets and restitution.

7. **Government's Agreements.** Based upon evidence in its possession at this time, the United States Attorney's Office for the Western District of Missouri, as part of this plea agreement, agrees not to bring any additional charges against the defendant for any federal criminal offenses related to the aforementioned scheme for which it has venue and which arose out of the defendant's conduct described above.

The defendant understands that this plea agreement does not foreclose any prosecution for an act of murder or attempted murder, an act or attempted act of physical or sexual violence against the person of another, or a conspiracy to commit any such acts of violence or any criminal activity of which the United States Attorney for the Western District of Missouri has no knowledge.

The defendant recognizes that the United States' agreement to forego prosecution of all of the criminal offenses with which the defendant might be charged is based solely on the promises made by the defendant in this agreement. If the defendant breaches this plea agreement, the United States retains the right to proceed with the original charges and any other criminal violations established by the evidence. The defendant expressly waives his right to challenge the initiation of the dismissed or additional charges against him if he breaches this agreement. The defendant expressly waives his right to assert a statute of limitations defense if the dismissed or additional charges are initiated against him following a breach of this agreement. The defendant further understands and agrees that, if the Government elects to file additional charges against him following his breach of this plea agreement, he will not be allowed to withdraw his guilty plea.

8. **Preparation of Presentence Report.** The defendant understands the United States will provide to the Court and the United States Probation Office a government version of the

9

offense conduct. This may include information concerning the background, character and conduct of the defendant, including the entirety of his criminal activities. The defendant understands these disclosures are not limited to the counts to which he has pleaded guilty. The United States may respond to comments made or positions taken by the defendant or the defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this plea agreement. The United States and the defendant expressly reserve the right to speak to the Court at the time of sentencing pursuant to Rule 32(i)(4) of the Federal Rules of Criminal Procedure.

9. **Withdrawal of Plea.** Either party reserves the right to withdraw from this plea agreement for any or no reason at any time prior to the entry of the defendant's plea of guilty and its formal acceptance by the Court. In the event of such withdrawal, the parties will be restored to their pre-plea agreement positions to the fullest extent possible. However, after the plea has been formally accepted by the Court, the defendant may withdraw his pleas of guilty only if the Court rejects the plea agreement, or if the defendant can show a fair and just reason for requesting the withdrawal. The defendant understands that, if the Court accepts his pleas of guilty and this plea agreement but subsequently imposes a sentence that is outside the defendant's applicable Sentencing Guidelines range, or imposes a sentence that the defendant does not expect, like or agree with, he will not be permitted to withdraw his pleas of guilty.

10. **Agreed Guidelines Applications.** With respect to the application of the Sentencing Guidelines to this case, the parties stipulate and agree as follows:

    a. The Sentencing Guidelines do not bind the Court and are advisory in nature. The Court may impose a sentence that is either above or below the

defendant's applicable Guidelines range, provided the sentence imposed is not "unreasonable";

b. The defendant has admitted his guilt and clearly accepted responsibility for his actions, and has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Government and the Court to allocate their resources efficiently. Therefore, he is entitled to a 3-level reduction pursuant to § 3E1.1(a) and (b) of the Sentencing Guidelines. The Government, at the time of sentencing, will file a written motion with the Court to that effect, unless the defendant: (1) fails to abide by all of the terms and conditions of this plea agreement and his pretrial release; or (2) attempts to withdraw his guilty pleas, violates the law, or otherwise engages in conduct inconsistent with his acceptance of responsibility;

c. The parties agree that the Court will determine his applicable criminal history category after receipt of the presentence investigation report prepared by the United States Probation Office;

d. The defendant understands that the estimate of the parties with respect to the Guidelines computation set forth in the subsections of this paragraph does not bind the Court or the United States Probation Office with respect to the appropriate Guidelines levels. Additionally, the failure of the Court to accept these stipulations will not, as outlined in paragraph 9 of this plea agreement, provide the defendant with a basis to withdraw his plea of guilty;

e. The United States agrees not to seek a sentence above the Sentencing Guideline Range adopted by the Court at the time of sentencing, and the defendant may request any sentence that he believes appropriate from the Court. The agreement by the parties is not binding upon the Court or the United States Probation Office, and the Court may impose any sentence authorized by law, including any sentence outside the applicable Guidelines range that is not "unreasonable";

f. The defendant consents to judicial fact-finding by a preponderance of the evidence for all issues pertaining to the determination of the defendant's sentence, including the determination of any mandatory minimum sentence (including the facts that support any specific offense characteristic or other enhancement or adjustment), and any legally authorized increase above the normal statutory maximum. The defendant waives any right to a jury determination beyond a reasonable doubt of all facts used to determine and enhance the sentence imposed, and waives any right to have those facts alleged in the Information. The defendant also agrees that the Court, in finding the facts relevant to the imposition of sentence, may consider any reliable information, including hearsay; and

g. The defendant understands and agrees that the factual admissions contained in paragraph 3 of this plea agreement, and any admissions that he will make during his plea colloquy, support the imposition of the agreed upon Guidelines calculations contained in this agreement.

11. **Effect of Non-Agreement on Guidelines Applications.** The parties understand, acknowledge and agree that there are no agreements between the parties with respect to any Sentencing Guidelines issues other than those specifically listed in paragraph 10 and its subsections. As to any other Guidelines issues, the parties are free to advocate their respective positions at the sentencing hearing.

12. **Change in Guidelines Prior to Sentencing.** The defendant agrees that, if any applicable provision of the Guidelines changes after the execution of this plea agreement, then any request by the defendant to be sentenced pursuant to the new Guidelines will make this plea agreement voidable by the United States at its option. If the Government exercises its option to void the plea agreement, the United States may charge, reinstate, or otherwise pursue any and all criminal charges that could have been brought but for this plea agreement.

13. **Government's Reservation of Rights.** The defendant understands that the United States expressly reserves the right in this case to:

   a. oppose or take issue with any position advanced by the defendant at the sentencing hearing which might be inconsistent with the provisions of this plea agreement;

   b. comment on the evidence supporting the charges in the Information;

   c. oppose any arguments and requests for relief the defendant might advance on an appeal from the sentences imposed, and that the United States remains free on appeal or collateral proceedings to defend the legality and propriety of the sentence actually imposed, even if the Court chooses not to follow any recommendation made by the United States; and

   d. oppose any post-conviction motions for reduction of sentence, or other relief.

14. **Waiver of Constitutional Rights.** The defendant, by pleading guilty, acknowledges that he has been advised of, understands, and knowingly and voluntarily waives the following rights:

    a. the right to plead not guilty and to persist in a plea of not guilty;

    b. the right to be presumed innocent until his guilt has been established beyond a reasonable doubt at trial;

    c. the right to a jury trial, and at that trial, the right to the effective assistance of counsel;

    d. the right to confront and cross-examine the witnesses who testify against him;

    e. the right to compel or subpoena witnesses to appear on his behalf; and

    f. the right to remain silent at trial, in which case his silence may not be used against him.

The defendant understands that, by pleading guilty, he waives or gives up those rights and that there will be no trial. The defendant further understands that, if he pleads guilty, the Court may ask him questions about the offenses to which he pleaded guilty, and if the defendant answers those questions under oath and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or making a false statement. The defendant also understands that he has pleaded guilty to felony offenses and, as a result, will lose his right to possess a firearm or ammunition and might be deprived of other rights, such as the right to vote or register to vote, hold public office, or serve on a jury.

15. **Waiver of Appellate and Post-Conviction Rights.**

    a. The defendant acknowledges, understands and agrees that, by pleading guilty pursuant to this plea agreement, he waives his right to appeal or collaterally attack a finding of guilt following the acceptance of this plea agreement,

13

except on grounds of (1) ineffective assistance of counsel; or (2) prosecutorial misconduct; and

      b.      The defendant expressly waives his right to appeal his sentence, directly or collaterally, on any ground except claims of: (1) ineffective assistance of counsel; (2) prosecutorial misconduct; or (3) an illegal sentence. An "illegal sentence" includes a sentence imposed in excess of the statutory maximum, but does *not* include less serious sentencing errors, such as a misapplication of the Sentencing Guidelines, an abuse of discretion, or the imposition of an unreasonable sentence. However, if the United States exercises its right to appeal the sentence imposed as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may, as part of the Government's appeal, cross-appeal his sentence as authorized by 18 U.S.C. § 3742(a) with respect to any issues that have not been stipulated to or agreed upon in this agreement.

16.    **Financial Obligations.** By entering into this plea agreement, the defendant represents that he understands and agrees to the following financial obligations:

      a.      The Court must order restitution to the victims of the offense to which the defendant is pleading guilty. The defendant agrees that the Court may order restitution in connection with the conduct charged in any counts of the Information which are to be dismissed and all other uncharged, related criminal activity;

      b.      The United States may use the Federal Debt Collection Procedures Act and any other remedies provided by law to enforce any restitution order that may be entered as part of the sentence in this case and to collect any fine;

      c.      The defendant will fully and truthfully disclose all assets and property in which he has any interest, or over which the defendant exercises control, directly or indirectly, including assets and property held by a spouse, nominee or other third party. The defendant's disclosure obligations are ongoing, and are in force from the execution of this agreement until the defendant has satisfied the restitution order in full;

      d.      The defendant hereby authorizes the USAO to obtain a credit report pertaining to him to assist the USAO in evaluating the defendant's ability to satisfy any financial obligations imposed as part of the sentence;

      e.      The defendant understands that a Special Assessment will be imposed as part of the sentence in this case. The defendant promises to pay the Special Assessment of $300.00 by submitting a satisfactory form of payment to the Clerk of the Court prior to appearing for the sentencing proceeding in this case.

The defendant agrees to provide the Clerk's receipt as evidence of his fulfillment of this obligation at the time of sentencing;

f. The defendant certifies that he has made no transfer of assets or property for the purpose of: (1) evading financial obligations created by this Agreement; (2) evading obligations that may be imposed by the Court; or (3) hindering efforts of the USAO to enforce such financial obligations. Moreover, the defendant promises that he will make no such transfers in the future; and

g. In the event the United States learns of any misrepresentation in the financial disclosure statement, or of any asset in which the defendant had an interest at the time of this plea agreement that is not disclosed in the financial disclosure statement, and in the event such misrepresentation or nondisclosure changes the estimated net worth of the defendant by ten thousand dollars ($10,000.00) or more, the United States may at its option: (1) choose to be relieved of its obligations under this plea agreement; or (2) let the plea agreement stand, collect the full forfeiture, restitution and fines imposed by any criminal or civil judgment, and also collect 100% (one hundred percent) of the value of any previously undisclosed assets. The defendant agrees not to contest any collection of such assets. In the event the United States opts to be relieved of its obligations under this plea agreement, the defendant's previously entered pleas of guilty shall remain in effect and cannot be withdrawn.

17. **Waiver of FOIA Request.** The defendant waives all of his rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

18. **Waiver of Claim for Attorney's Fees.** The defendant waives all of his claims under the Hyde Amendment, 18 U.S.C. § 3006A, for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

19. **Defendant's Breach of Plea Agreement.** If the defendant commits any crimes, violates any conditions of release, or violates any term of this plea agreement between the signing of this plea agreement and the date of sentencing, or fails to appear for sentencing, or if the

15

defendant provides information to the Probation Office or the Court that is intentionally misleading, incomplete or untruthful, or otherwise breaches this plea agreement, the United States will be released from its obligations under this agreement. The defendant, however, will remain bound by the terms of the agreement, and will not be allowed to withdraw his plea of guilty.

The defendant also understands and agrees that, in the event he violates this plea agreement, all statements made by him to law enforcement agents subsequent to the execution of this plea agreement, any testimony given by him before a grand jury or any tribunal, or any leads from such statements or testimony, shall be admissible against him in any and all criminal proceedings. The defendant waives any rights that he might assert under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that pertains to the admissibility of any statements made by him subsequent to this plea agreement.

20. **Defendant's Representations.** The defendant acknowledges that he has entered into this plea agreement freely and voluntarily after receiving the effective assistance, advice and approval of counsel. The defendant acknowledges that he is satisfied with the assistance of counsel, and that counsel has fully advised him of his rights and obligations in connection with this plea agreement. The defendant further acknowledges that no threats or promises, other than the promises contained in this plea agreement, have been made by the United States, the Court, his attorneys, or any other party to induce him to enter his plea of guilty.

21. **No Undisclosed Terms.** The United States and the defendant acknowledge and agree that the above stated terms and conditions, together with any written supplemental agreement that might be presented to the Court in camera, constitute the entire plea agreement between the parties, and that any other terms and conditions not expressly set forth in this agreement or any

16

written supplemental agreement do not constitute any part of the parties' agreement and will not be enforceable against either party.

22. **Standard of Interpretation.** The parties agree that, unless the constitutional implications inherent in plea agreements require otherwise, this plea agreement should be interpreted according to general contract principles and the words employed are to be given their normal and ordinary meanings. The parties further agree that, in interpreting this agreement, any drafting errors or ambiguities are not to be automatically construed against either party, whether or not that party was involved in drafting or modifying this agreement.

Teresa A. Moore
Acting United States Attorney

Dated: 5/5/2021    By: _____
Patrick Carney
Assistant United States Attorney
Kansas Bar No. 20254

I have consulted with my attorney and fully understand all of my rights with respect to the offenses charged in the Information. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines. I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand this plea agreement and I voluntarily agree to it.

Dated: 5/5/2021    _____
Brian Ruth, Sr.
Defendant

I am defendant Brian Ruth, Sr.'s attorney. I have fully explained to him his rights with respect to the offenses charged in the Information. Further, I have reviewed with him the provisions of the Sentencing Guidelines which might apply in this case. I have carefully reviewed every part of this plea agreement with him. To my knowledge, Brian Ruth, Sr.'s decision to enter into this plea agreement is an informed and voluntary one.

Dated: 5/5/2021    _____
Ian Lewis
Assistant Federal Public Defender
Attorney for Defendant

17